**Eugene E. BONE, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 95–919.**

United States Court of Veterans Appeals.

Oct. 11, 1996.

Eugene E. Bone, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Mary Ann Flynn, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

FARLEY, Judge:

This is an appeal from a July 26, 1995, decision of the Board of Veterans' Appeals (BVA or Board) which denied reinstatement of the appellant's death pension benefits after they were terminated by VA due to excess income. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the BVA decision.

## I. BACKGROUND

The appellant is the widow of veteran John D. Bone, who died in May 1965. Record (R.) at 19. She began receiving a death pension in January 1966, retroactive to May 1965. *Ibid.* Her pension was what has been known since 1978 as a "Section 306 pension": Under section 306 of the Veterans' and Survivors' Pension Improvement Act of 1978 (1978 Act), Pub.L. No. 95–588, 92 Stat. 2497 (1978), persons eligible for or receiving death pensions as of December 31, 1978, could elect to receive an "improved" pension or to receive the pension as provided under the old law, i.e., receive a Section 306 pension. *See id.* § 306, 92 Stat. at 2508.

In February 1993, a VA regional office (RO) proposed to terminate the appellant's benefits, effective retroactively to January 1, 1991, based on a report from the Internal Revenue Service which showed that she had received $15,269 in interest payments in 1990, and on her "acknowledgment that [she] did have bank accounts which paid interest. Although the accounts have been closed, the interest [she] received in 1990 from them has caused [her] income for 1990 to exceed the annual income limitation of $8,113." R. at 38. The RO gave the appellant 60 days in which to submit evidence showing why her benefits should not be terminated. *Ibid.* The appellant responded that her 1990 interest income was $5,625.37, not $15,269, and enclosed a federal tax form as proof. R. at 41–43.

In March 1993, the RO terminated the appellant's pension benefits, effective January 1, 1991, and informed her that she should submit the appropriate form if she wished to be considered for an improved pension. R. at 46. The appellant then submitted bank statements to prove that her interest income for 1990 was $5,625.37 and that her bank balance on December 31, 1990, was $116,-259.71, although through a series of withdrawals, the entire amount was withdrawn by March 20, 1991. R. at 71, 82. In a May 1993 Notice of Disagreement, the appellant wrote that she had closed the account which had earned the disputed amount of interest in order to buy a house. R. at 85. In a June 1993 letter, the RO responded:

You are not entitled to benefits under Section 306, the program under which you were receiving benefits. Even though your interest for 1990 was only $5,625, your countable income as of January 1, 1991, was $8,616. This is greater than the limit of $8,113 for a widow with no dependents. We determine your countable in-

come by taking 90% of your Social Security and adding your interest to it.

You will be entitled to improved pension from January 1, 1991, based on the amount of Social Security you have previously reported....

Additional information is needed before we may consider your request to reopen your claim for death pension. On the enclosed VA Form 21–4138 please explain how you accumulated $116,259 in savings....

R. at 93. The appellant responded that she and her brother had inherited the money in October or November of 1990 after her sister died. R. at 96, 99, 103.

In a July 1993 Statement of the Case, the RO informed the appellant that "[a]lthough the entire amount [of the inheritance] could not be countable as your income, we are required by law to count your share ... (1/2 of $116,000.00) as a lump sum payment during the year in which it is received." R. at 110. The RO also noted that even if the appellant had not received income from any other source, "the inheritance alone would have necessitated the termination of your benefits effective January 1, 1991." *Ibid.* In January 1994, the appellant submitted a statement to the BVA in which she stated that a VA official "told us that my VA Monthly Benefit Check of [$]97 would be started back with proof of how the income was spent. [He] failed [sic] about this matter!" R. at 134.

In July 1995, the BVA denied entitlement to Section 306 pension after December 31, 1990. The BVA noted that the appellant's share of the inheritance, received in 1990, was enough by itself to cause her countable income for that year to exceed the limit for Section 306 death pension. R. at 8. The Board then found that the appellant's Section 306 death pension was properly terminated as of January 1, 1991, "under the end-of-the-year rule," citing 38 C.F.R. § 3.660 (1995). R. at 9. The Board continued:

Further, as indicated under 38 C.F.R. § 3.960 [ (1995) ], once a person's Section 306 death pension is terminated due to excess income, the person's only possible future entitlement to pension would be under the improved pension program. Accordingly, although the appellant's income beginning in 1991 might have been below the limit for Section 306 death pension, she would no longer have had any entitlement to Section 306 death pension due to the January 1, 1991, termination of that benefit, regardless of the amount of income. *Ibid.* The Board also stated: "As the focus of [the appellant's] attention has been on the question of entitlement to Section 306 death pension, she may not have understood what was required to apply for improved death pension. The matter is referred to the RO for appropriate action." R. at 5.

## II. TERMINATION OF BENEFITS

Section 306 of the 1978 Act provides that a person who does not elect to receive improved pension shall continue to receive "pension at the monthly rate being paid to such person on December 31, 1978," subject to all applicable laws as in effect on December 31, 1978. 1978 Act, § 306(a)(2). However, payment of Section 306 pension was and is subject to an annual income limitation, which is adjusted for cost-of-living increases in the same manner that improved pension payments are adjusted under 38 U.S.C. § 5312. 1978 Act, § 306(a)(2)(A), (a)(3). For 1990, the Section 306 pension annual income limitation for a surviving spouse with no dependents was $8,113. 54 Fed.Reg. 48,-320 (Nov. 20, 1990).

Section 306 provides that "annual income" shall be "determined in accordance with section 503 of title 38, United States Code, as in effect on December 31, 1978." *Id.* § 306(a)(2)(A). Under that section, annual income was defined generally as "all payments of any kind or from any source." 38 U.S.C. § 503(a) (1978). Although the statute provided a number of exceptions, inheritance of money was not among them. *Ibid.; see also* 38 C.F.R. § 3.261(a)(29) (1995) (indicating that an inheritance of money is included in the calculation of annual income for Section 306 pension purposes). In her informal brief, the appellant argues that because the inheritance money was spent on buying a house and furnishings her pension benefits should be reinstated and that she was given

incorrect information from VA personnel regarding her benefits. This Court, however, has made clear that "erroneous advice given by a government employee cannot be used to estop the government from denying benefits." *McTighe v. Brown,* 7 Vet.App. 29, 30 (1994); *see also Walker v. Brown,* 8 Vet.App. 356, 359 (1995).

■ The Court concludes that it was proper for VA to include the appellant's share of the inheritance from her sister's death, half of $116,000, in calculating her countable income, and in concluding that the appellant's pension had to be terminated as of January 1, 1991. *See* 38 C.F.R. § 3.660(a)(2) (where discontinuance of Section 306 pension is required due to, inter alia, an increase in income which "could not reasonably have been anticipated based on the amount actually received from that source the year before, ... discontinuance shall be made effective the end of the year in which the increase occurred"). "As the appellant has not demonstrated that the Board committed either factual or legal error in arriving at its conclusion that the appellant's income exceeded the statutory ceiling, the Court will affirm the decision of the BVA with respect to the termination of benefits." *Hermogenes v. Brown,* 9 Vet.App. 75, 77 (1996).

## III. ENTITLEMENT TO RE-INSTATEMENT OF SEC-TION 306 BENEFITS

As the Board noted, 38 C.F.R. § 3.960(d) provides: "Termination of section 306 pension ... for one of the reasons listed in paragraph (b) of this section precludes a person from thereafter establishing entitlement under any other pension program except the improved pension program," and excess income is one of the reasons included in § 3.960(b). This is not an instance where a regulation "flies against the plain language of the statutory text [ ] exempt[ing] courts from any obligation to defer to it" or to an agency's interpretation. *Brown v. Gardner,* — U.S. —, —, 115 S.Ct. 552, 557, 130 L.Ed.2d 462 (1994). As this Court stated in *Hermogenes:*

The Supreme Court has held that an interpretation of a statute by the administrative agency charged with administering it is entitled to deference to the extent that the administrative construction, whether reached by adjudication or by rulemaking, is not inconsistent with the statutory mandate and does not frustrate the policy that Congress sought to implement. *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981). In determining whether the BVA's interpretation is inconsistent with the statutory mandate, the Court must inquire into whether the Secretary's construction is " 'sufficiently reasonable' " to be accepted by a reviewing court. *Id.* at 39, 102 S.Ct. at 46, citing *Train v. Natural Resources Defense Council,* 421 U.S. 60, 75, 95 S.Ct. 1470, 1479–80, 43 L.Ed.2d 731 (1975); *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978).

9 Vet.App. at 78.

Section 3.960(d) of title 38, C.F.R., represents a sufficiently reasonable construction of section 306 of the 1978 Act. In passing the 1978 Act, Congress created an entirely new pension program with the intent that anyone who filed a claim after December 31, 1978, would be considered under the new program. *See* 1978 Act, §§ 306, 401; *see also* H.R. REP. No. 1225, 95th Cong., 2d Sess. 4 (1978), 1978 U.S.C.C.A.N. 5583, 5585 (stating that bill "would create a new pension system applicable to all veterans of Mexican Border Service or subsequent wars, their widows, or children, who, subsequent to January 1, 1979, the effective date of the new program, are or become eligible for a VA non-service-connected pension."). Persons already receiving pensions were allowed to continue to receive benefits under the original programs, *see id.* § 306(a), (b), so that those who would have received less in monthly payments under the new program would not suffer a loss in income. *See Lewis v. Brown,* 8 Vet.App. 287, 289 (1995).

■ Once the appellant's benefits were terminated due to her receipt of the inheritance, in order to begin receiving a pension

again she had to file a new claim. Since this new claim was filed after December 31, 1978, it seems clear that it should have been considered under the statutes applicable to the improved pension program. Therefore, 38 C.F.R. § 3.960(d) seems entirely consistent with the 1978 Act. The Court holds that the regulation is "reasonable and not in conflict with the statutory mandate, policy, or purpose." *Hermogenes, supra.*

## IV. CONCLUSION

Upon consideration of the record, the appellant's informal brief, and the Secretary's brief, the Court holds that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). The Court also is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert, supra.* Accordingly, the July 26, 1995, decision of the Board of Veterans' Appeals is AFFIRMED.