# United States Court of Appeals for the Federal Circuit

---

**TERRANCE D. MASSIE,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2012-7087

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 09-3397, Judge Lawrence B. Hagel.

---

Decided: July 29, 2013

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

MICHAEL P. GOODMAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and MARTIE

ADELMAN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before RADER, *Chief Judge,* LOURIE and O'MALLEY, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Terrance D. Massie appeals from the decision of the United States Court of Appeals for Veterans Claims (the "Veterans Court") determining that a letter from his physician did not qualify as an informal claim for an increased rating and thus denying him entitlement to an earlier effective date for his service-connected varicose vein disability. *Massie v. Shinseki*, 25 Vet. App. 123 (Sept. 14, 2011). Because the Veterans Court did not err in interpreting the regulatory requirements for an informal claim for increased benefits based on a report of examination or admission, we *affirm*.

## BACKGROUND

Massie served on active duty in the United States Army from November 1968 to August 1970. The Department of Veterans Affairs (the "VA") regional office (the "RO") awarded him benefits for varicose veins and related surgery, initially as 10% disability and increased to 50%, effective March 1990. On April 4, 2001, Massie filed a claim for an increased disability rating and submitted a May 1999 letter from a VA physician stating that he had been treating Massie for "multiple medical problems" including "chronic venous insufficiency" that had "persisted in spite of prior surgical treatment with vein stripping." *Massie*, 25 Vet. App. at 124. The letter concluded that "[t]his problem . . . left Mr. Massie with significant pain when he [was] on his feet for any period of time." *Id.*

Based on his submission and other evidence not relevant to this appeal, the RO increased Massie's rating to 100%, effective April 4, 2001, the date of his filing for an increased rating. Nonetheless, Massie filed a notice of

disagreement and a subsequent appeal seeking an effective date of April 4, 2000, under 38 U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2) (allowing award of disability up to one year before filing of a claim), based on the 1999 letter from the VA physician. The Board of Veterans' Appeals (the "Board") rejected his argument and denied his claim for an earlier effective date prior to April 4, 2001, stating that the letter was dated more than one year prior to the 2001 filing date, only reflected his ongoing chronic disability, and did not evidence any treatment during the relevant time period between April 4, 2000 and April 4, 2001. Massie appealed to the Veterans Court, arguing for the first time that the Board erred by not considering the May 1999 letter from the VA physician as an informal claim for increased disability under 38 C.F.R. § 3.157(b)(1).

On appeal, the Veterans Court discussed in depth whether, under *Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000), it should even entertain Massie's newly-raised informal claim argument because Massie failed to exhaust his administrative remedies prior to appealing to the Veterans Court. The Veterans Court stated that, under the circumstances, it would ordinarily have exercised its discretion under *Maggitt* to invoke the exhaustion doctrine and bar Massie from arguing for the first time that the 1999 letter was an informal claim for increased disability. The Veterans Court, however, noted a possible exception to *Maggitt* under *Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009), which held that if the Board fails to consider an issue reasonably raised in the record, then the Board commits error requiring remand. Thus, out of "an abundance of caution," the Veterans Court decided to forgo invoking the exhaustion doctrine under *Maggitt* and instead evaluated whether Massie's claim that an informal claim for increased benefits was reasonably raised in the record by the 1999 letter and hence whether the Board therefore erred in failing to consider it. *Massie*, 25 Vet. App. at 130.

After reviewing the record, however, the Veterans Court held on the merits that the May 1999 letter from the VA physician was not an informal claim for increased disability because it was not in fact reasonably raised in the record. Specifically, the Veterans Court held that the letter in question was not a "report of examination" under its interpretation of § 3.157(b)(1) because it (1) did not describe the results of a "specific, particular examination" and (2) did not suggest that Massie's condition had worsened. As a consequence, the Veterans Court ruled that Massie had not reasonably raised a theory of entitlement to an earlier effective date under § 3.157(b)(1). This appeal followed.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited by statute. 38 U.S.C. § 7292. We "have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof [by the Veterans Court] . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." *Id.* § 7292(c). We may not, however, absent a constitutional challenge, "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2). We therefore generally lack jurisdiction to review challenges to the Board's factual determinations or to any application of law to fact. *See, e.g.*, *Johnson v. Derwinski*, 949 F.2d 394, 395 (Fed. Cir. 1991). But we do have jurisdiction here to determine the proper interpretation of a regulation such as § 3.157(b)(1).

Massie contends that the Veterans Court misinterpreted § 3.157(b)(1) to require that a letter from a treating physician expressly relate to a specific, identifiable outpatient or hospital examination to qualify as a "report of examination" as a basis for an informal claim for increased benefits. According to Massie, such a narrow interpretation of the regulation, when the letter was

generated by a VA physician and constructively present in the VA's records, is contrary to 38 C.F.R. §§ 5107(b) and 7104(a) requiring the Board to consider all relevant evidence and applicable laws and regulations.

The government responds that, because the letter does not demonstrate that Massie's symptoms have worsened, it cannot qualify as an informal claim for increased benefits under § 3.157(b)(1) and 38 U.S.C. § 5110(b)(3). The government adds that the Veterans Court did not err in interpreting § 3.157(b)(1) to require that a specific examination be identified. The government posits that the Veterans Court decision is entirely consistent with §§ 5107(b) and 7104(a) because the letter was in fact considered by the Board and, as the Veterans Court noted, it did not qualify as an informal claim for increased benefits.

The Veterans Court, in effect, interpreted the requirements of 38 C.F.R. § 3.157(b)(1), which details the requirements for an informal claim for increased benefits based on a report of examination, to require a report of a specific examination that indicated that a veteran's disability has worsened. We do so as well.

The regulation at issue reads as follows:

(1) **Report of examination or hospitalization by Department of Veterans Affairs or uniformed services.** The date of outpatient or hospital examination or date of admission to a VA or uniformed services hospital will be accepted as the date of receipt of a claim. The date of a uniformed service examination which is the basis for granting severance pay to a former member of the Armed Forces on the temporary disability retired list will be accepted as the date of receipt of claim. The date of admission to a non-VA hospital where a veteran was maintained at VA expense will be accepted as the date of receipt of a claim, if VA maintenance was previously authorized; but if VA

maintenance was authorized subsequent to admission, the date VA received notice of admission will be accepted. The provisions of this paragraph apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established or when a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission.

§ 3.157(b)(1) (emphasis added).

The parties raise two issues within our jurisdiction in interpreting § 3.157(b)(1): whether a report of an examination must identify a single examination and its date, and whether it must also indicate that the symptoms of a disability have worsened.

We conclude that the Veterans Court did not err in interpreting § 3.157(b)(1) regarding both contested issues. First, the report of examination must identify a specific, particular examination to qualify as an informal claim for increased benefits. Section 3.157(b)(1) is entitled a "Report of examination or hospitalization by [VA]" and requires the identification of "the date" of "examination" or "admission" to set the date of receipt of the claim. The several references to "examination" and "the date" make clear that a specific, dated examination or admission is required. The Veterans Court thus did not err in determining that the term "report of examination" requires that the report "describe the results of a specific, particular examination." *Massie*, 25 Vet. App. at 133. We hasten to add, however, that a report of examination could be based on more than one examination. However, at a minimum, to qualify as an informal claim for increased benefits, a "report of examination" must identify at least one specific examination by date.

Second, it is also clear that the report of an examination, in order to qualify as an informal claim for increased benefits, must indicate that the veteran's disability has

worsened. Section 5110(b)(3), which must be consistent with the "date of receipt" of the claim in § 3.157(b)(1), provides that the effective date of such an award of increased benefits is tied to the earliest ascertainable date "that an increase in disability had occurred" up to one year before the date of receipt of that informal claim. 38 U.S.C. § 5110(b)(3); *see also* 38 C.F.R. § 3.400(o)(2) ("Earliest date as of which it is factually ascertainable that an increase in disability had occurred if claim is received within 1 year from such date otherwise, date of receipt of claim."). Although the language of § 3.157(b)(1) does not expressly require that the report indicate the veteran's service-connected disability has worsened, any contrary interpretation would be inconsistent with the statute, and the regulation can hardly require less than the statute. It also would make no sense, because under that reading any subsequent medical record could trigger an informal claim under § 3.157(b)(1). *See generally Timex V.I. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) (holding that constructions that cause "absurd" results are to be avoided). The Veterans Court thus did not err in requiring that a report of examination offered as a basis for an informal claim for increased benefits must indicate that the disability at issue has increased.[1] *See Massie*, 25 Vet. App. at 134.

---

[1] The Veterans Court also consulted the Veterans Benefits *Administration Adjudication Procedures Manual* (M21-1MR) which lists eight (8) different factors intended to assist the VA in determining whether a report of examination is sufficient for compensation and pension purposes. The Veterans Court ultimately concluded, however, that for a medical record to qualify as a "report of examination" under § 3.157(b)(1), it could be far less detailed. We agree with that assessment. As long as a report references one or more actual examinations and indicates

The Veterans Court's accompanying determinations that the 1999 letter from the VA physician did not identify a specific examination and did not indicate worsened symptoms are dispositive applications of law to fact, outside of our jurisdiction. § 7292(d)(2). Thus, while affirming the meaning of the regulation, we do not review the Veterans Court's decision concerning the application of the regulation.

Finally, we disagree with Massie's position that the Veterans Court's decision is inconsistent with §§ 5107(b) and 7104(a), which require the Board to consider all the evidence of record and to consider and apply all applicable provisions of law and regulation. The Board did specifically consider the 1999 VA physician's letter in its decision. The Board, however, did not need to expressly discuss whether that letter was an informal claim for increased benefits because, as the Veterans Court found, it was not reasonably raised in the record. Thus, contrary to Massie's argument, the Board did not have to evaluate that letter as an informal claim for increased benefits under § 3.157(b)(1).

Because we resolve the appeal based on the correctness of the Veterans Court's interpretation of § 3.157(b)(1), we need not address the Veterans Court's discussion of exhaustion or the effect of *Maggitt* on this case. We have considered Massie's remaining arguments and conclude that they are without merit. Accordingly, we *affirm* the decision of the Veterans Court.

**AFFIRMED**

COSTS

No costs.

---

that a veteran's disability has worsened, it will qualify under section § 3.157(b)(1).