﻿Citation Nr: AXXXXXXXX
Decision Date: 02/27/20 Archive Date: 02/27/20

DOCKET NO. 190514-9302
DATE: February 27, 2020

ORDER

Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU) prior to September 28, 2015 is denied.

FINDINGS OF FACT

1. The Veteran’s only service-connected disability is schizophrenia.

2. In a February 1984 decision, the Board of Veterans’ Appeals (Board), in pertinent part, denied entitlement to a TDIU.

3. In October 1986, the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida denied the Veteran’s claim for a rating in excess of 50 percent for schizophrenia.

4. The Veteran filed a notice of disagreement with the RO’s October 1986 rating decision, and he was furnished a statement of the case (SOC); in December 1986, he asked that the appeal be dismissed.

5. In a September 1988 decision, the Board granted a 70 percent rating for schizophrenia; in so doing, the Board considered and rejected the Veteran’s claim that he was unemployable as a result of impairment related to schizophrenia.

6. No motion for revision or reconsideration of the Board’s September 1988 decision has been made or received.

7. In a September 1988 rating decision, approximately one week after the aforementioned Board decision, and absent the receipt of any additional evidence, the RO implemented the Board’s 70 percent award, making it effective from September 30, 1986.

8. Thereafter, no formal or informal claim for an increased rating, to include TDIU, was received until September 28, 2015.

9. The Veteran’s disability is not shown to have increased in severity so as to render him incapable of securing or following a substantially gainful occupation during the one-year period prior to September 28, 2015.

CONCLUSION OF LAW

The criteria for entitlement to a TDIU prior to September 28, 2015 have not been met. 38 U.S.C. §§ 1155, 5107, 5110; 38 C.F.R. §§ 3.1, 3.155, 3.157, 3.340, 3.341, 3.400, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served honorably on active duty in the United States Navy from April 1969 to October 1971.

This matter arises from a January 2016 rating decision issued by a VARO. The RO, in pertinent part, granted a 100 percent schedular rating for schizophrenia, effective September 28, 2015, and denied entitlement to a TDIU. The Veteran submitted a legacy notice of disagreement (VA Form 21-0958) in March 2016, seeking an award of TDIU for the period prior to September 28, 2015. In June 2018, he elected review in the modernized review system. 38 C.F.R. § 19.2(d).

The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Following a denial on Higher Level review in October 2018, he timely appealed to the Board of Veterans’ Appeals (Board) in May 2019, requesting direct review of the evidence considered by the agency of original jurisdiction. 38 C.F.R. § 20.202(b)(1).

Entitlement to a TDIU prior to September 28, 2015

The Veteran contends that he is entitled to a TDIU prior to September 28, 2015. Specifically, he has advanced argument to the effect that VA failed to address his reasonably raised claim of entitlement to a TDIU in a September 23, 1988 Board decision and a September 27, 1988 rating decision and, as such, the claim for a TDIU has remained pending and unadjudicated since that time. He seeks to establish entitlement to a TDIU from September 30, 1986; the date that he first met the percentage disability requirements for consideration of TDIU on a schedular basis. In support of that conclusion, he cites pieces of medical evidence from November 1978, December 1979, and October 1984; a VA Form 646 submitted by the Veteran’s former representative in January 1987; and Norris v. West, 12 Vet. App. 413 (1999).

Awards of TDIU are governed by 38 C.F.R. § 4.16. Under that regulation, total disability ratings for compensation can be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disability. See also 38 C.F.R. §§ 3.340, 3.341.

A TDIU claim is a claim for increased compensation; therefore, the effective date rules for increased compensation apply. See Hurd v. West, 13 Vet. App. 449 (2000). Under 38 U.S.C. § 5110(a), the effective date of an increase in a Veteran’s disability compensation shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor. 38 U.S.C. § 5110(b)(2) provides an exception to this general rule: “The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date.”

Thus, three possible effective dates may be assigned depending on the facts of an increased rating claim: (1) if an increase in disability occurs after the claim is filed, the date that the increase is shown to have occurred (date entitlement arose) (38 C.F.R. § 3.400(o)(1)); (2) if an increase in disability precedes the claim by a year or less, the date that the increase is shown to have occurred (factually ascertainable) (38 C.F.R. § 3.400(o)(2)); or, (3) if an increase in disability precedes the claim by more than a year, the date that the claim is received (date of claim) (38 C.F.R. § 3.400(o)(2)). See Gaston v. Shinseki, 605 F.3d 979, 982-84 (Fed. Cir. 2010); Harper v. Brown, 10 Vet. App. 125, 126 (1997).

Under the law in effect prior to March 24, 2015, a claim was defined broadly to include a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p); Brannon v. West, 12 Vet. App. 32, 34-5 (1998); Servello v. Derwinski, 3 Vet. App. 196, 199 (1992). Once a formal claim for compensation had been allowed, receipt of a report relating to the examination or treatment of a disability for which service connection had previously been established could be accepted as an informal claim for increased benefits. See 38 C.F.R. §§ 3.155, 3.157 (2014). If the report was generated by VA, the date of the examination or treatment was accepted as the date of receipt of the informal claim. See 38 C.F.R. § 3.157(b)(1) (2014). If the report was privately generated, the date of receipt of the report was accepted as the date of receipt of the informal claim. Id. In order to qualify as an informal claim, the report had to describe the results of a specific, particular examination, and indicate that the Veteran’s condition had worsened. Massie v. Shinseki, 724 F.3d 1325 (2013).

In the present case, the record reflects that the RO in St. Petersburg, Florida granted service connection for schizophrenia (then identified as schizophrenic reaction, paranoid type) by a decision entered in August 1979. The disability was evaluated as 30 percent disabling, effective October 4, 1978.

In March and April 1980, the RO granted a temporary total rating for the Veteran’s disability, effective February 14, 1980 to March 31, 1980, with a 50 percent rating assigned from April 1, 1980. In August 1980, the RO denied extension of the Veteran’s temporary total rating, a rating in excess of 50 percent, and entitlement to a TDIU. In December 1981, the RO severed service connection for schizophrenia. 

On appellate review in February 1983, the Board restored service connection for the Veteran’s acquired psychiatric disability. In February 1984, the Board denied a rating in excess of 50 percent for schizophrenia, as well as entitlement to a TDIU. (Of note, in November 1984, the Board declined to revisit its February 1984 decision.)

In October 1984, the Veteran submitted a statement wherein he asserted, among other things, that his impairment rendered substantial employment impossible. A contemporaneous VA special neuropsychiatric examination (one of the documents cited by the Veteran in support of the present appeal) noted, among other things, that the Veteran was “currently unemployable, in need of treatment, feels isolated and helpless against his environment, [and] is unquestionably angry and delusional.” A contemporaneous VA Vocational Rehabilitation Panel Summary (another of the documents cited by the Veteran) found that personality factors, impaired concentration, and thought processes, together with ineffective interpersonal skills, invalidated his assets and rendered him occupationally infeasible on a permanent basis. It was noted that training and subsequent employment could not reasonably be expected for the Veteran because of the severity of his disability.

In October 1986, the RO denied the Veteran’s claim for a rating in excess of 50 percent for schizophrenia. In November 1986, the Veteran initiated an appeal to the Board and asserted entitlement to a 100 percent rating. A statement of the case was issued later that same month. In December 1986, he asked that the appeal be dismissed. However, his representative thereafter submitted a VA Form 1-646 (Statement of Accredited Representative in Appealed Case) in January 1987 wherein the representative emphasized the content of an October 1984 examination report (referenced above) noting that the Veteran was unemployable and the prognosis guarded.

In February 1988, the RO accepted correspondence in lieu of a VA Form 1-9 (Appeal to Board of Veterans’ Appeals) and the Veteran’s appeal was certified to the Board. In another VA Form 1-646, dated in April 1988, the Veteran’s representative asked that the Board consider granting a higher evaluation for the Veteran’s disability, “to include a total evaluation.” In an Informal Hearing Presentation dated in June 1988, the Veteran’s representative asserted, in part, that the Veteran’s disability was so severe that it would render him unemployable.

In a September 1988 decision, the Board granted a 70 percent rating, and no more, for schizophrenia. In so doing, the Board did not list TDIU as a separate issue on appeal or recite the law and regulations pertaining thereto. The Board did acknowledge, however, that it was “maintained that he is unemployable.” Based on review of the “totality of the evidentiary record,” the Board concluded that his disability was productive of no more than severe industrial impairment. 

Approximately one week after the aforementioned Board decision, and absent the receipt of any additional evidence, the RO implemented the 70 percent award, making it effective from September 30, 1986.

Following a thorough review of the record, and the applicable law and regulations, the Board finds that the preponderance of the evidence is against the award of a TDIU prior to September 28, 2015. As to the medical evidence cited by the Veteran from November 1978 and December 1979, the Board’s February 1984 decision clearly extinguished any claims for TDIU that had been pending up to that time. Similarly, as to the October 1984 evidence cited by the Veteran, the Board’s decision in September 1988 also extinguished any claims for TDIU that were then pending. As noted above, the Board did not recite the law and regulations pertinent to TDIU in its September 1988 decision. However, it explicitly acknowledged the allegation of unemployability and found, based on the totality of the record, that the Veteran’s disability was productive of no more than severe industrial impairment and that no more than a 70 percent rating was warranted. In doing so, it effectively denied a TDIU. See, e.g., Locklear v. Shinseki, 24 Vet. App. 311, 315 (2011) (noting that a request for a TDIU is not a separate claim for benefits, but instead a request for an appropriate disability rating as part of the initial adjudication of a claim or a claim for increased compensation).

The Board is prohibited on direct appeal from considering a previously decided claim on the same factual basis. 38 U.S.C. § 7104(b). The only means for obtaining such review are via a motion reconsideration of the Board's decision on grounds of obvious error, pursuant to 38 U.S.C. § 7103, or via a motion for revision of the Board's decision on grounds of CUE, pursuant to 38 U.S.C. § 7111. To date, no such motion has been made or received.

As to the subsequent RO decision in September 1988, its only purpose was to implement the 70 percent award. In the absence of any new evidence, as a subordinate adjudicative body, the RO had no authority, much less an obligation, to address the unemployability issue considered by the Board.

Thereafter, no formal or informal claim for an increased rating, to include TDIU, was received until September 28, 2015. Although medical treatment records were received into the record that mentioned the Veteran’s psychiatric symptoms, to include in 1999, 2002, 2004, 2006, 2012, and 2014, none of those records described the results of a specific, particular examination that evidenced a worsening of the Veteran’s condition as compared to the record as it existed in September 1988. Nor was any formal claim for TDIU received between September 1988 and September 28, 2015. As such, the Board finds no legal or evidentiary basis for the conclusion that a formal or informal claim for TDIU was open and pending prior to September 28, 2015.

The Board has also considered whether the evidence reflects that the Veteran’s disability increased in severity during the one-year period prior to September 28, 2015, so as to allow an earlier effective date under 38 C.F.R. § 3.400(o)(2). However, there is nothing in the record to establish that the increase occurred during that particular time frame. To the contrary, the Veteran’s representative has asserted that the Veteran’s unemployability was present for many years prior to September 28, 2015.

In reaching these conclusions, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. 38 U.S.C. § 5107(b). The appeal must be denied. 

 

D. BRENNINGMEYER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board R. Gandhi, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.